Filed 4/8/16  P. v. Cueto CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ODLENAIR CUETO,<br><br>    Defendant and Appellant. | D067769<br><br><br><br>(Super. Ct. No. SCE337573) |

APPEAL from a judgment of the Superior Court of San Diego County,

John M. Thompson, Judge.  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant

and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Alastair J.

Agcaoili and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

After a bench trial, the trial court found Odlenair Cueto guilty of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)[1] (counts 3 and 4) and found true three great bodily injury enhancement allegations (§ 12022.7, subd. (a)) associated with respect to each count.[2]  The trial court also found Cueto guilty of reckless driving (Veh. Code, § 23103, subd. (a)) (count 5).  The court sentenced Cueto to an aggregate term of 13 years in prison, consisting of the upper term of 4 years on count 3, and three consecutive terms of 3 years each for the three great bodily injury enhancements associated with count 3.[3]

On appeal, Cueto claims that there is insufficient evidence in the record to support the trial court's guilty verdicts on the assault with a deadly weapon counts (§ 245, subd. (a)(1)) (counts 3 and 4) and the trial court's great bodily injury enhancement findings (§ 12022.7, subd. (a)) (counts 3 and 4).  Cueto also claims that the trial court erred in admitting certain hearsay evidence, and that any failure by defense counsel to adequately object to the admission of the hearsay evidence constituted ineffective assistance of counsel.  We affirm the judgment.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]     During the trial, the trial court granted Cueto's motion for acquittal with respect to two counts of attempted murder (§§ 664, 187, subd. (a)) (counts 1 and 2).

[3]     The court sentenced Cueto on the remaining substantive offenses and enhancements in this case to various terms, all to be served concurrently with the 13-year term imposed on count 3.  In addition, the court imposed a four-year sentence for a conviction in another case, to be served concurrently with the sentence in this case.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People's evidence*

On January 6, 2014, John Sagan (John) was driving a motor home westbound on Interstate 8 near Pine Valley in the right or "slow" lane.  John's wife, Ramona Sagan (Ramona), and their three daughters Renee, Roisin, and Genevieve, were also traveling in the motor home.  As the motor home drove up a hill on the highway, John noticed a large, white sports utility vehicle (SUV) traveling behind them.  Cueto was driving the SUV.

Cueto stayed behind the Sagans and matched their speed.  John believed that the SUV was "obviously following" the motor home.  Cueto then accelerated forward, coming within inches of the back of the motor home.  John told Ramona that something was "seriously wrong," and asked her to have her phone ready in case "something happen[ed]."  John also asked Ramona to look out the back window to attempt to see the SUV's license plate.  Ramona moved to the back window of the motor home to view the SUV and told John that the SUV did not have a front license plate.  Cueto continued to follow the Sagans at an unsafe distance for several minutes.

Cueto slowed down and began to travel farther behind the Sagans' motor home.  John thought that the incident was over.  Suddenly, Cueto accelerated to a speed

approaching 100 miles per hour and struck the motor home from behind. The motor home lurched forward "violently." John's wife and children screamed. John directed his children to get on the floor of the motor home because he thought that would be the safest place for them to be in case of a collision. John accelerated, hoping that Cueto would stop following them.

Immediately after striking the motor home from the rear, Cueto moved into the lane next to the motor home and, within five to seven seconds, positioned his SUV parallel to the Sagans' motor home. Cueto drove next to the motor home for one to two seconds, and then looked at John through the motor home's driver's side window. John saw Cueto "take the steering wheel and just crank it to the far right." It appeared to John that Cueto's action in causing the SUV to turn into his lane was an "extremely deliberate" act. The SUV entered the Sagans' lane and collided with the motor home. The collision forced the motor home off the road and down a cliff that paralleled the highway.

Martin Parish, who was driving behind the SUV and the motor home, testified that just before the crash, he saw the SUV "ma[k]e a sharp right turn in front of the motor home." Parrish stated that "there was nothing to indicate [Cueto] lost control of the vehicle" prior to the crash.

California Highway Patrol officer and trained accident reconstructionist, Wellington Bargar, responded to the scene. Based on his investigation, Officer Bargar concluded that Cueto's act in causing his vehicle to collide with the Sagans' motor home was "an

4

intentional act."  Bargar also determined that the damage to the motor home was consistent with being rear-ended and then struck again before being forced off the road.

As a result of the collision, John, Ramona, and Roisin all suffered injuries, as described in detail in part III.B, *post*.

B.      *The defense*

Cueto testified in his own defense.  He admitted that he was the driver of the SUV involved in the collision.  Cueto explained that he decided to drive to Arizona on the day before the incident because he was "being delusional" and he "thought somebody was out to get [him]."  Cueto acknowledged that he was supposed to be taking various medications on the day in question, but said that he stopped taking the medications because they were causing him discomfort in his joints.

Cueto stated that shortly after crossing the Arizona border, he parked at a hotel and took a nap.  After the nap, he decided to drive back to California.  According to Cueto, while driving back toward San Diego on Interstate 8 West, he fell asleep at the wheel and rear-ended the Sagans' motor home.  Shortly after rear-ending the motor home, Cueto attempted to pass the motor home.  According to Cueto, as he drove next to the motor home, his tire blew out, causing him to lose control of his SUV and crash into the Sagans' motor home.  Cueto denied that he intentionally caused his vehicle to strike the motor home.

5

III.

DISCUSSION

A.    *There is sufficient evidence in the record to support the trial court's guilty verdicts on the assault with a deadly weapon counts*

Cueto claims that there is insufficient evidence in the record to support the trial court's guilty verdicts on the assault with a deadly weapon counts.

1.    *Governing law*

a.    *Assault with a deadly weapon*

Section 245, subdivision (a)(1) provides in relevant part:  "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment . . . ."

In *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, the court outlined the law governing the requisite intent with which a defendant must act in order to be guilty of committing an assault:

> " '[A]ssault requires only a general criminal intent and not a specific intent to cause injury.  [Citation.]'  [Citation.]  In order to convict on assault, the jury need only find that the defendant (1) willfully committed an act which by its nature would probably and directly result in the application of physical force against another and (2) was aware of facts that would lead a reasonable person to realize this direct and probable consequence of his or her act.  [Citation.]  The crime does not require any intent to cause an application of physical force, or a substantial certainty that an application of force will result."  (*Id.* at pp. 1186-1187.)

"In the context of [section 245, subdivision (a)(1)], a ' "deadly weapon" ' is ' "any object, instrument, or weapon which is used in such a manner as to be capable of

6

producing and likely to produce, death or great bodily injury." ' " (*In re D.T.* (2015) 237 Cal.App.4th 693, 698.)

        b.    *Sufficiency of the evidence*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

        2.    *Application*

John and Ramona both testified that they saw Cueto pull his vehicle alongside the motor home, look toward John, and seconds later, turn the wheel of his vehicle sharply to the right, causing Cueto's vehicle to go directly into the path of the motor home. From this testimony alone, there was plainly sufficient evidence to support the verdicts.[4] In addition to this testimony, John 's testimony that Cueto had been tailgating their motor home and struck the rear of the motor home just before turning sharply in front of it supported the inference that Cueto acted deliberately. Parish's testimony that he saw

---

4     Count 3 named John as the victim, and count 4 named Ramona as the victim.

Cueto's vehicle pull parallel to the motor home and then make a "sharp right turn," into the path of the motor home corroborated the Sagans' testimony, as did Officer Bargar's testimony that there was no evidence that Cueto's tire had blown out just before the crash, as Cueto had claimed.

Cueto contends that his testimony that the collision with the Sagans was "an accident," and/or Parish's testimony, which Cueto maintains "directly contradicted" John's testimony,[5] requires a different result. We disagree. Our function is not to reweigh the evidence that the trier of fact has already evaluated and considered. (See, e.g., *People v. Fuiava* (2012) 53 Cal.4th 622, 711 [a " 'substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence . . . upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question' "].)

Accordingly, we conclude that there is sufficient evidence in the record to support the trial court's guilty verdicts on the assault with a deadly weapon counts.

B.    *There is sufficient evidence in the record to support the trial court's true findings on the great bodily injury enhancement allegations*

Cueto claims that there is insufficient evidence in the record to support the trial court's true findings on the great bodily injury enhancement allegations.

---

5    In support of this contention, Cueto contends that Parish's testimony suggested that John pulled over to the shoulder of the highway after being rear-ended and that Parish testified that the SUV passed the motor home and then cut back in front of the motor home just before the accident.

1.   *Governing law*

a.   *Section 12202.7*

Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

"Great bodily injury is defined in section 12022.7, subdivision (f), as 'significant or substantial physical injury.'  However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.'  [Citation.]  'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' "  (*People v. Woods* (2015) 241 Cal.App.4th 461, 486.)

b.   *Sufficiency of the evidence*

A challenge to the sufficiency of the evidence supporting the court's true findings on a great bodily injury enhancement (§ 12022.7) is governed by the substantial evidence standard of review outlined in part III.A.2, *ante*.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*); see, e.g., *People v. Saez* (2015) 237 Cal.App.4th 1177, 1189.)

2.   *Application*

The true findings on the great bodily injury enhancements were based on injuries suffered by John, Ramona, and Roisin as a result of the collision.

John testified that the collision aggravated a previous lower back injury that involved "dis[c] and muscle."  John further explained that the back injury from the

9

collision caused him to be "in a lot of pain," and made it "sometimes difficult even to walk." John received three months of chiropractic care to treat the injury. John also worked half days for the first couple of weeks after the collision, used a back support, and was on limited duty for "at least a month." In addition to the back injury, John suffered a bruised knee that caused him pain for approximately two weeks. Evidence of John's back and knee injuries constitutes substantial evidence to support the great bodily injury enhancement finding with respect to him. (See, e.g., *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047 (*Washington*) ["An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury' "].)

The People presented evidence that Ramona and Roisin both suffered concussions as a result of the collision.[6] A concussion is an injury severe enough to constitute great bodily injury in and of itself. Cueto does not argue to the contrary, but contends that "the evidence of a concussion was totally derived from an improperly overruled objection on lack of foundation."[7] Even assuming, strictly for the sake of argument, that the trial court erred in admitting evidence that Ramona and Roisin suffered concussions, "[i]n considering a sufficiency claim, 'the reviewing court must consider *all* of the evidence presented at trial, including evidence *that should not have been admitted.*' " (*In re Z.A.*

---

6      The People also presented evidence that, as a result of her concussion, Roisin did not participate in her homeschooling program or track and field activities for three months.

7      In part III.C, *post*, we address Cueto's contention that the trial court erred in admitting hearsay evidence that Ramona and her daughters suffered concussions.

10

(2012) 207 Cal.App.4th 1401, 1425, quoting *People v. Story* (2009) 45 Cal.4th 1282, 1296 (*Story*).) The *Story* court explained the reason for this rule as follows:

> " '[W]here the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.' [Citation.] Accordingly, 'a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause . . . .' [Citation.] We have followed the high court in this regard." (*Story*, *supra*, at pp. 1296-1297.)

Further, in addition to evidence of the concussions, the People presented evidence that Ramona suffered "numerous injuries to her back and shoulders and legs," an eye injury that caused her to have "blood in [her] eyes," a cut with glass in her head, and a hairline fracture of her nose. Ramona testified that she was in "serious pain," after the collision and that she was hospitalized for "the whole day." In addition, Ramona stated that she was unable to "kneel or walk properly for a couple weeks" after the collision. The People also presented evidence that Roisin had "cuts and bruises," and that she went to the hospital and underwent an MRI.[8] Accordingly, we conclude that the record contains substantial evidence to support the great bodily injury enhancement findings with respect to Ramona and Roisin. (See, e.g., *Washington*, *supra*, 210 Cal.App.4th at p. 1047.)

---

[8] The People offered photographs of Roisin's injuries in evidence, but Cueto has not requested that the exhibit containing the photographs be transmitted to this court. (See Cal. Rules of Court, rule 8.320(e).) We remind counsel of appellant's responsibility to transmit all exhibits necessary to review appellant's claims on appeal. (See, e.g., *People v. Whalen* (2013) 56 Cal.4th 1, 85 ["it is appellant's burden to present a record adequate for review and to affirmatively demonstrate error"].)

11

Cueto argues that a great bodily injury enhancement must be supported by evidence that the victim suffered injuries "beyond any injury normally inherent in the crime," (citing *Escobar*, *supra*, 3 Cal.4th at p. 750), and contends there was no such evidence in this case because the victims' injuries were those "inherent when a vehicle collides with another vehicle." Even assuming that *Escobar* requires proof of injuries greater than those inherent in the substantive offense to which a great bodily injury enhancement is attached, the substantive offenses in this case are *assault with a deadly weapon, not* colliding one's vehicle into the vehicle of another. Further, it is clear that there is substantial evidence that the victims in this case suffered injuries beyond those inherent in the commission of an assault with a deadly weapon, since assault with a deadly weapon does not require the infliction of *any* injury. (See *People v. Brown* (2012) 210 Cal.App.4th 1, 7 [assault with deadly weapon does not require infliction of actual injury].)

C.    *Cueto forfeited his claim that the trial court erred in admitting hearsay evidence that Ramona and her daughters suffered concussions by failing to raise a hearsay objection in the trial court*

Cueto claims that the trial court erred in admitting hearsay evidence that Ramona and her daughters suffered concussions as a result of the collision.

1.    *Factual and procedural background*

During the prosecutor's direct examination of Ramona, the prosecutor asked her to describe the injuries that her daughters suffered as a result of the collision. During the examination, the following colloquy occurred:

12

"[The prosecutor]: Does that [picture] accurately depict the extent of the injuries [to Renee] along with the other picture?

"[Ramona]: Yes. But I think she had concussions is what the doctor said. So we didn't do any school for nearly three months.

"[The prosecutor]: Just this daughter[, Renee,] or the other daughters too?

"[Ramona]: All the daughters. We home school. So we had to stop schooling.

"[The prosecutor]: All three of your daughters had concussions and were prohibited from going to school for three months?

"[Defense counsel]: Objection. Lacks foundation.

"The Court: The objection is going to be overruled only to the extent [the prosecutor] — whether or not it is Ms. Sagan's determination that the kids had concussions, or was she present when a doctor told her that Renee had been diagnosed with a concussion? Let's take the kids one at a time.

"[The prosecutor]: Were you present when the doctor reviewed and diagnosed each of your three daughters?

"[Ramona]: Yes. After we went to the hospital then we went to a personal doctor, and he said they have concussions.

"[The prosecutor]: Each of the three daughters had concussions?

"[Ramona]: Yes. The doctor came home. He said that they do have concussions. They should not do their training. They go to track and field. So they shouldn't do any of that.

"[¶] . . . [¶]

"[The prosecutor]: As a result of the accident did you yourself suffer a concussion?

"[Ramona]: Yes. The doctor said I had a concussion, but I was not unconscious. At no point did I go unconscious."

13

## 2. *Governing law*

A reviewing court may not reverse a judgment based on a trial court's purported erroneous admission of evidence unless the appellant objected to the admission of the evidence in the trial court on the specific ground urged to be erroneous on appeal. (Evid. Code, § 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; see, e.g., *People v. Jennings* (2010) 50 Cal.4th 616, 654 [concluding that defendant's claim that admission of statement "violated the Evidence Code prohibition against hearsay evidence . . . was forfeited . . . by defendant's failure to make a hearsay objection at trial"].) " 'Specificity is required both to enable the [trial] court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.' " (*People v. Pearson* (2013) 56 Cal.4th 393, 438.)

While a defendant may be excused from the objection requirement where it is clear that the objection would have been futile (see, e.g., *People v. Carrillo* (2004) 119 Cal.App.4th 94, 101), futility is not demonstrated merely by the fact that the trial court overruled a different evidentiary objection as to the same evidence. (See, e.g., *People v. Valdez* (2012) 55 Cal.4th 82, 138-139 ["Nor is defendant correct in asserting that, because the trial court overruled the objections defense counsel did make, an objection under Evid. Code, § 352 would have been futile"].)

14

3.     *Application*

At no time during the colloquy quoted above did defense counsel raise a hearsay objection.  Cueto acknowledges in his brief on appeal that his counsel did not raise a hearsay objection, but contends that the trial court "pinpointed the hearsay problem in [the court's] response to the [foundation] objection[ ]. . . ."  Cueto further argues that the trial court indicated "that a hearsay statement by a doctor would cure the foundational objection," and contends that, under these circumstances, "[n]o more need have been said by defense counsel to preserve this [hearsay] objection for appeal."

We are not persuaded.  The trial court's remarks in ruling on defense counsel's foundation objection did not indicate that the court would overrule a hearsay objection if defense counsel had posed such an objection.  While the court's remarks were somewhat ambiguous, they clearly were responsive to defense counsel's foundation objection in that the court appeared to question whether Ramona was *herself* diagnosing that her daughters had suffered concussions, or rather, whether Ramona was present when *a doctor* told Ramona that Renee had suffered a concussion.  Importantly, the court did not indicate to defense counsel that it would overrule a hearsay objection to any testimony by Ramona to the effect that the doctor had said that her children had suffered concussions.

Under these circumstances, we conclude that Cueto forfeited his claim that the trial court erred in admitting hearsay evidence that Ramona and her daughters suffered concussions by failing to raise a hearsay objection in the trial court.

15

D.      *Cueto has not established that defense counsel provided ineffective assistance in failing to raise a hearsay objection to Ramona's testimony that a doctor stated that she and her daughters had suffered concussions*

Cueto claims that trial counsel provided ineffective assistance in failing to raise a hearsay objection to Ramona's testimony that a doctor stated that she and her daughters had suffered concussions as a result of the collision.[9]

1.      *Governing law*

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness," evaluated "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*); accord, *People v. Ledesma* (1987) 43 Cal.3d 171, 216 (*Ledesma*).) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Thus, "[w]hen the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675 (*Centeno*).)

"Because the decision whether to object is inherently tactical, the failure to object to evidence will seldom establish incompetence." (*People v. Freeman* (1994) 8 Cal.4th

---

9      Cueto states in his brief that he raises an ineffective assistance of counsel claim only in the event that this court concludes that Cueto forfeited his hearsay claim by failing to raise a hearsay objection in the trial court.

16

450, 490-491 (*Freeman*); accord, *People v. Riel* (2000) 22 Cal.4th 1153, 1202 (*Riel*) ["Whether to object at trial is among 'the minute to minute and second to second strategic and tactical decisions which must be made by the trial lawyer during the heat of battle' "].)

If counsel's performance has been shown to be deficient, the defendant is entitled to relief only if he can also establish that he was prejudiced by counsel's ineffectiveness. (*Strickland*, *supra*, 466 U.S. at pp. 691-692; accord, *Ledesma*, *supra*, 43 Cal.3d at p. 217.)

2.    *Application*

In this direct appeal, Cueto cannot meet the high burden of establishing that there was " ' " 'no conceivable tactical purpose' " ' " (*Centeno*, *supra*, 60 Cal.4th at p. 675), for his counsel's "inherently tactical" (*Freeman*, *supra*, 8 Cal.4th at pp. 490-491), decision not to raise a hearsay objection to Ramona's testimony that a doctor informed her that she and her daughters had suffered concussions.  If defense counsel had raised a hearsay objection, counsel would have risked drawing greater attention to the unfavorable evidence.  In addition, to the extent such an objection were successful, the People may have elected to call the doctor as a witness to testify with respect to such diagnosis, thereby exposing Cueto to potentially even more damaging testimony.  Defense counsel may have reasonably determined that Ramona's brief testimony on the subject was preferable to potentially more damaging medical testimony that the People may have elicited if defense counsel had raised a hearsay objection.

Although not specifically argued by Cueto, we have considered whether defense counsel's foundation objection to the prosecutor's question to Ramona concerning whether her daughters had suffered concussions and were prohibited from going to school,[10] demonstrates that counsel could have had " ' " 'no conceivable tactical purpose' " ' " (*Centeno*, *supra*, 60 Cal.4th at p. 675) in failing to have also raised a hearsay objection to the question, or to Ramona's testimony to the effect that a doctor had stated that she and her daughters had suffered concussions. Defense counsel's foundation objection suggests that counsel sought to prevent Ramona from testifying that her daughters had suffered concussions to the extent Ramona lacked any basis for providing such testimony. However, defense counsel may have decided, after the prosecutor asked Ramona a followup question concerning whether she was present when *a doctor* diagnosed each of her daughters as having suffered a concussion, that it would be better not to emphasize testimony that a doctor had reached such a diagnosis, or to risk eliciting additional testimony on the topic by raising a hearsay objection.[11] (See *Riel*, *supra*, 22 Cal.4th at p. 1202 [observing that the decision whether to object at trial is "among 'the minute to minute and second to second strategic and tactical decisions,' " counsel must make at trial].)

---

[10]    As noted in part III.C.1, *ante*, defense counsel raised a foundation objection to the following question during the prosecutor's examination of Ramona, "All three of your daughters had concussions and were prohibited from going to school for three months?"

[11]    As noted in part III.C.1, *ante*, after the trial court overruled Cueto's foundation objection, the prosecutor asked Ramona, "Were you present when *the doctor* reviewed and diagnosed each of your three daughters?"  (Italics added.)

Accordingly, we conclude that Cueto has not established that defense counsel provided ineffective assistance in failing to raise a hearsay objection to Ramona's testimony that their family doctor stated that she and her daughters had suffered concussions.

IV.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.