Filed 4/20/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re B.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B277076 (Super. Ct. No. 2016025026) (Ventura County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.M.,<br><br>    Defendant and Appellant. | |

A common butter knife is designed to cut and spread butter. In the hand of a person bent on assaulting another, it may be a useful tool to inflict great bodily injury. Consistent with an express direction from the California Supreme Court (*People v. McCoy* (1944) 25 Cal.2d l77, l88-189) and time-honored rules on appeal, we conclude that the trial court's factual finding that the instant butter knife was a deadly weapon must be affirmed on appeal. To the extent that *In re Brandon T.* (2011) 191 Cal.App.4th 1491 holds to the contrary, we respectfully disagree.

As we shall explain, an assault with a deadly weapon is complete when the defendant, with the requisite intent, uses an object in a manner which is capable of producing great bodily injury upon the victim. Such an assault is not negated by 1. the victim's use of a shield or body armor to prevent injury; or 2. ineptness or poor aim in the use of the object; or 3. lack of success in inflicting great bodily injury.

B.M. appeals from a juvenile court order declaring her a ward of the court and ordering her to serve 90 days in a juvenile justice facility. After a contested jurisdictional hearing, the court sustained a petition charging that appellant committed a felony assault with a deadly weapon (a knife) in violation of Penal Code section 245, subdivision (a)(1).

Relying on *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), appellant contends the juvenile court erroneously admitted statements she made to the police. She also contends that the evidence is insufficient to support the finding that the knife she used was a deadly weapon. These contentions are without merit and we affirm.

*Facts*

Appellant, seventeen years old, was angry because she could not get inside the family home. Her mother had changed the locks to the house. She entered the house through a window and went into her sister's (S.M.) bedroom. She tried to pull S.M.'s hair out, threw a telephone at her, and left the room.[1]

---

[1] This uncharged assault shows that appellant intended to use any object available to harm her sister. In theory, throwing a telephone at another person with the requisite intent can be an assault with a deadly weapon. (See *People v. Cordero* (1949) 92 Cal.App.2d 196, 199 [beer bottle as a club or a missile].)

She returned carrying "a small . . . knife, like a butter knife."  It was "[t]he type of knife that you would use to butter a piece of toast."  The knife was metal and about six inches long.  The blade was about three inches long.  "It wasn't . . . sharp" and had "small ridges" along one side.

S.M. was lying on her back on a bed when appellant attacked her with the knife.  She covered herself with a blanket for protection.  The knife struck the blanket near her legs a "few times."  Through the blanket, S.M. felt pressure from the knife.  On a scale of one to ten with one being the least amount of pressure, the pressure was "[m]aybe like a five or a six."  Instead of "pok[ing]" S.M. with the knife, appellant made a "slicing kind of" motion.

Appellant was "yelling" at S.M. who was terrified by the attack.  When appellant left the bedroom, S.M. telephoned the police.  The recording of her frantic call for help to the 911 operator was received by the juvenile court.

In response to the telephone call, Officer Ryan Reynosa drove to S.M.'s residence.  On the way there, he was given a description and the name of the suspect.  He saw appellant outside the residence "and asked her if her name was [B.M.]."  Appellant replied, "Yes."  Officer Reynosa testified, "I then asked her to walk over towards me and sit against the bumper by my marked patrol vehicle so I could talk to her about what had happened."  Appellant complied with his request.

Officer Reynosa told appellant that he "had gotten a call of a fight inside the house and [he] asked her what . . . happened."  Appellant explained as follows:  she arrived at the

---

Appellant also assaulted another sister giving her a bloody nose.

3

residence and had been unable to open the front door with her key.  She believed that S.M. had rekeyed the lock.  Appellant entered the residence through an unlocked window.  She was "very upset."  Appellant "grabbed . . . what she described as a butter knife off of the kitchen counter and went upstairs to confront her sister [S.M.]."  Upon entering her sister's bedroom, appellant "began yelling at [S.M.] . . . and . . . was holding the butter knife in her right hand and was pointing it at S.M."  When S.M. told her to get out and threatened to call the police, appellant made "downward stabbing motion[s]" toward "the bedding . . . that S.M. had pulled up over her."  Appellant's intent was "to scare S.M."  Appellant "then ran back downstairs and put the knife in the kitchen sink."

Appellant testified as follows:  She had been living at the residence for two weeks.  After entering the residence through a window, she grabbed a butter knife in "the heat of the moment."  She "wanted to scare [S.M.]."  While holding the knife, she approached S.M., who was sitting on her bed.  Appellant was "yelling at her and cussing at her and telling her, . . . 'why did you . . . change the locks?'"  When appellant "got close . . . with the knife, [S.M.] covered herself with the blanket and started kicking her legs."  Appellant was "pretty sure [the knife] probably did touch the blanket[] because [S.M.] was kicking it, and [appellant] was right there, like, touching the bed."  The part of the knife that touched the blanket was the blade - "[t]he part where you would . . . cut . . . toast and stuff."

*Alleged Miranda Violation*

Appellant claims that her "constitutional rights were violated" because Officer Reynosa did not inform her of "her Miranda rights before detaining and questioning her."  Based on

the alleged *Miranda* violation, appellant moved to exclude her statements to Officer Reynosa. The juvenile court denied the motion. It found that appellant was not subjected to custodial interrogation.

"We apply a de novo standard of review to a trial court's denial of a motion to suppress [*sic*, exclude] under *Miranda* insofar as the trial court's underlying decision entails a measurement of [as here] undisputed facts against the law." (*People v. Riva* (2003) 112 Cal.App.4th 981, 988.)

"It is settled that *Miranda* advisements are required only when a person is subjected to 'custodial interrogation.' [Citations.]" (*People v. Davidson* (2013) 221 Cal.App.4th 966, 970.) "An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] The test for *Miranda* custody is, "'would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."' [Citation.] The objective circumstances of the interrogation are examined, not the "'subjective views harbored by either the interrogating officers or the person being questioned."' [Citation.]" (*People v. Kopatz* (2015) 61 Cal.4th 62, 80.)

In determining whether a person was subjected to custodial interrogation, "[t]he totality of the circumstances is considered and includes '(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citation.] Additional factors are whether the officer informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom

5

of movement, whether the police were aggressive, confrontational, and/or accusatory, and whether the police used interrogation techniques to pressure the suspect.  [Citation.]" (*People v. Davidson, supra*, 221 Cal.App.4th at p. 972.)

Based on the "totality of the circumstances," we conclude that appellant was not subjected to custodial interrogation.  Officer Reynosa did not place her under arrest or handcuff her.  He was the only officer present.  The detention was not prolonged and occurred in a noncoercive atmosphere outside appellant's residence.  Officer Reynosa's questioning was not aggressive, confrontational, or accusatory.  He simply told her that he "had gotten a call of a fight inside the house and [he] asked her what . . . happened."  Reynosa did not use interrogation techniques to pressure appellant.  He testified, "She was just telling me what happened."  "[A] reasonable person in [appellant's] situation would have believed [s]he was free to leave at any time and to terminate the interview. . . .  The [juvenile] court correctly denied [appellant's] motion to suppress [sic, exclude] the interview." (*People v. Kopatz, supra*, 61 Cal.4th at p. 82.)

*Sufficiency of the Evidence*

"The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases . . . ." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)  "In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"

[Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "'A finding . . . based upon a reasonable inference . . . will not be set aside by an appellate court unless it appears that the inference was wholly irreconcilable with the evidence. [Citations.]' . . . '[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal. [Citation.]' [Citations.]" (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 851; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"As used in [Penal Code] section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.)

The issue is whether a reasonable trier of fact could find beyond a reasonable doubt that appellant used the butter knife "'in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar, supra*, 16 Cal.4th at pp. 1028-1029.) We conclude that a reasonable trier of fact could and did make the requisite finding.

7

Why does a person who assaults another person pick up an object to do so?  The answer is apparent:  to do greater harm than can be done with fists or feet.  The victim of an assault with an object apprehends a greater degree of danger than a victim who is not assaulted with an object.  The use of an object in an assault increases the likelihood of great bodily injury.  In this instance, the Legislature has provided for greater punishment for the would-be assailant who utilizes an object in such a manner as to be "capable" of producing great bodily injury.[2]

Here, sitting as trier of fact, and utilizing the power and ability to draw inferences from the evidence, the trial court concluded that the six-inch metal butter knife could be used to slice or stab, even though it was not designed for such.  It was used in a manner "capable" of producing great bodily injury.  This factual finding is not "wholly irreconcilable" with the evidence.  (*Phillips v. Campbell*, *supra*, 2 Cal.App.5th at p. 851.)  This appeal "turns" on this factual finding.

It matters not that the victim was able to fend off great bodily injury with her blanket.  This self defense does not negate appellant's assault.  Similarly, that appellant was not adept at using a knife does not inure to her benefit.  She could have easily inflicted great bodily injury with this metal butter

---

[2] There is a historical exception to this observation.  When Abraham Lincoln was accosted by a detractor, his bodyguard of tremendous physical strength, Ward Hill Lamon, knocked the assailant unconscious.  He did this with a single blow to the head with his fist.  Lincoln reportedly told Lamon that in the future, he should give the victim a chance:  "Hereafter, when you have occasion to strike a man, don't hit him with your fist!  Strike him with a club or crowbar or something that won't kill him."

knife and just as easily have committed mayhem upon the victim's face. The trial court expressly found that it was only "lucky" that there were no injuries.

In *People v. McCoy*, *supra*, 25 Cal.2d 177, our Supreme Court quoted with approval the Court of Appeal opinion in *People v. Raleigh* (1932) 128 Cal.App. 105, which said, "When it appears . . . that [such] an instrumentality . . . is capable of being used in a 'dangerous or deadly' manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a 'dangerous or deadly weapon' may be thus established, at least for the purposes of that occasion." (*Id.* at pp. 108-109; see also *People v. Graham* (1969) 71 Cal.2d 303, 328.)

As indicated, we part company with the opinion of *In re Brandon T.*, *supra*, 191 Cal.App.4th 1491. The attorney general submits, and we agree, that this case was "wrongly decided." This opinion has the earmarks of impermissible reweighing of the evidence. There, the appellate court drew inferences away from the factual finding under review. The defendant slashed at the victim's face and neck with a butter knife and used sufficient force to break the knife. (*Id.* at p. 1497.) Even from the bare recital of facts, it is apparent that the butter knife was "used in a manner so as to be capable" of producing great bodily injury. That it broke during the assault preventing further stabbing should not inure to the defendant's benefit. The brutality of the attack in *In re Brandon T.* should not be minimized with hindsight.

The extent of the injuries, or lack of them, is relevant but not determinative. (*People v. Aguilar*, *supra*, 16 Cal.4th at p.

1028.)  The *In re Brandon T.* opinion gives undue emphasis to the lack of injuries.  The fallacy of this focus is easily shown by the typical assault with a deadly weapon with a firearm when the defendant has poor aim.  (See, e.g., *People v. Bradford* (1976) 17 Cal.3d 8, 20.)

*Disposition*

The orders appealed from are affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

10

Brian J. Back, Judge

Superior Court County of Ventura

_____

Donna Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.