Filed 6/10/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E061137 |
| Plaintiff and Respondent, | (Super.Ct.No. J252049) |
| v. | OPINION |
| D.T., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Warren J. Williams and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

1

The trial court sustained a juvenile wardship petition (Welf. & Inst. Code, § 602) after finding true the allegation that defendant and appellant D. T. (minor) assaulted a victim with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] The court deemed the offense a misdemeanor and ordered minor to be placed at his parent's home, subject to certain probation terms.

On appeal, minor argues insufficient evidence supports the allegation that he used a deadly weapon. He therefore asks us to reduce the allegation the court found true to one for simple assault. (Pen. Code, § 240.) Because we disagree with minor about the sufficiency of the evidence, we affirm the adjudication order.

## FACTUAL AND PROCEDURAL BACKGROUND

Minor and the victim had been friends before the incident at issue on this appeal. Minor was 13 years old at the time of disposition. The victim was in eighth grade at the time of the incident and was 14 years old when she testified on April 30, 2014. At one point in time, minor had been allowed to visit the victim's house, but the victim's mother said he was no longer welcome there because he had failed to listen to her rules. Although minor and the victim used to play and joke with each other, they did not "rough

_____

[1] The court also found true an allegation that minor possessed a knife on school grounds. (Pen. Code, § 626.10, subd. (a)(1).) Minor's counsel submitted on this allegation after close of evidence. On appeal, minor makes no contentions about the allegation relating to possession of a knife on school grounds. We therefore engage in no further discussion of this allegation.

2

play." The victim had on occasion smacked or pushed minor in a joking manner, but she had not done so on the day of the incident that is the basis of this appeal.

On that day, the victim was trying to avoid minor and did not want to talk to him. He approached her anyway. When minor pulled at the hood on the victim's sweater, she tried to pull away and told him to leave her alone. Instead of complying, minor retrieved a pocketknife from his pocket and, while still holding onto the victim's clothing, opened it so she could see the blade.

Minor said, "You won't be scared of this." The victim responded, "If my mom was here, you wouldn't have said that." She was scared she would get hurt when she saw the knife and heard what minor said. Minor made no verbal response to the victim's statement that things would be different if her mother were present, but he poked her multiple times in the upper back with the exposed blade of the knife. The knife felt "sharp" and "pointy," and the victim felt some pain. She did not think minor would hurt her, or that he was trying to cut or kill her. However, the victim was scared that an injury might occur because minor had a knife pressed to her back. Minor appeared to be "trying to bother" the victim, and he seemed "mad."

At this point, a teacher approached, and minor stopped hitting her with the knife and went into class. The victim told both a teacher and a police officer about the incident. When speaking to the police officer, the victim was "visibly upset." On more than one occasion, she told the officer she was scared that minor might hurt her. The

3

police officer noticed a red mark but no broken skin where the victim said she felt the most pain.

The police officer escorted minor to the assistant principal's office, where minor produced the knife. Using a ruler, the police officer determined that the sharpened portion of the knife was more than two and one-half inches long. The blade was sharp, and the tip of the knife was pointed. The police officer testified that she had seen knives of the same shape and sharpness cause both "wounds that [bled] profusely" and "wounds that cause people to die." She based these observations on her more than eight years' experience as a police officer.

After receiving *Miranda*[2] warnings, minor spoke to the police officer about the incident. He explained that he had accidentally left his father's knife in his backpack after using it to open a package of headphones. Minor initially denied having pulled out a knife in his interaction with the victim. After the police officer reminded him that it was important to tell the truth, minor stated that he and the victim had been "playing" earlier in the day. More specifically, he said that the victim had hit him in the forehead. Minor said he would "get her back." The victim then indicated minor would have to catch her first. Even after admitting that he had shown the knife to the victim, minor at first denied poking her with it. Eventually, he told the police officer he "may have

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

accidentally poked her," but he could not recall how many times. Minor acknowledged that the victim told him to stop and was "continually try[ing] to get away from him." According to minor's statements to the police officer, the incident ended when the victim "pulled away and was able to run from him." Minor expressed remorse and said "he could have hurt" the victim. He also said that he and the victim had been "just playing," and that he did not intend to harm her.

Shortly before she testified at the jurisdictional hearing, the victim spoke to the police officer again. She seemed "upset" and nervous about testifying. The victim told the police officer she "didn't want to tell on" minor.

After the close of evidence at the jurisdictional hearing, the court found that "the knife in question [was] being used as a deadly weapon." It stated: "The knife blade was open. It was poked numerous times to the back of the victim in this case to the extent that it could have resulted in great bodily injury if more force were to be applied with the use of that knife."

ANALYSIS

Minor's sole contention on appeal is that the evidence does not support a finding that he used a deadly weapon when he assaulted the victim. More specifically, he contends the knife was not likely to cause death or great bodily injury because he only used it to poke the victim in the back. Minor also argues he did not intend to use the knife as a deadly weapon because he and the victim were only playing. Finally, minor

5

asserts the limited nature of the victim's injury demonstrates that the knife was not likely to cause death or great bodily injury.  We reject each of these contentions in turn.

In reviewing minor's claim that proof of an essential element was lacking, "we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Davis* (1995) 10 Cal.4th 463, 509.)  In the course of this inquiry, we " ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid*.)

"Penal Code section 245, subdivision (a)(1) punishes 'an assault upon the person of another with a *deadly weapon or instrument other than a firearm* or by any means of *force likely* to produce great bodily injury.' (Italics added.)" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1026 (*Aguilar*), fn. omitted.)  In the context of this statutory provision, a " 'deadly weapon' " is " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' " (*Id.* at pp. 1028-1029.)  Because this definition focuses on potentiality, the People need not prove an actual injury to a victim, or even physical contact between the defendant and a third person, in order to substantiate a conviction for assault with a deadly weapon other than a firearm.  (*People v. Brown* (2012) 210 Cal.App.4th 1, 7 (*Brown*).)

"The Supreme Court has explained section 245 contemplates two categories of deadly weapons:  In the first category are objects that are 'deadly weapons as a matter of law' such as dirks and blackjacks because 'the ordinary use for which they are designed establishe[s] their character as such.  [Citation.]  Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury.'  (*Aguilar*, [*supra*, 16 Cal.4th] at p. 1029; accord, *In re David V*. (2010) 48 Cal.4th 23, 30, fn. 5; see *Aguilar*, at p. 1030 ['deadly weapons or instruments not inherently deadly are defined by their use in a manner capable of producing great bodily injury'].)  For example, a bottle or a pencil, while not deadly per se, may be a deadly weapon within the meaning of section 245, subdivision (a)(1), when used in a manner capable of producing and likely to produce great bodily injury. (See, e.g., *People v. Zermeno* (1999) 21 Cal.4th 927, 931 [beer bottle]; *People v. Page* (2004) 123 Cal.App.4th 1466, 1472 [Fourth Dist., Div. Two.] [pencil].)"  (*Brown*, *supra*, 210 Cal.App.4th at pp. 6-7.)

When deciding whether an object that is not inherently deadly is nonetheless likely to produce great bodily injury or death, "the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.  [Citations.]" (*Aguilar*, *supra*, 16 Cal.4th at p. 1029.)  Two of the facts the trier of fact may consider are "the nature of [any] injuries [that occur] and their location," which are "relevant . . . in determining whether an object was used in a manner capable of

7

producing and likely to produce great bodily injury." (*Brown*, *supra*, 210 Cal.App.4th at p. 7.) Moreover, "an instrument can be a deadly weapon even if it is not actually used with deadly force." (*People v. Page*, *supra*, 123 Cal.App.4th at p. 1472.) Consequently, multiple California courts have affirmed convictions under Penal Code section 245, subdivision (a)(1), when the deadly weapon used was "some hard, sharp, pointy thing that was used only to threaten, and not actually used to stab." (*Page*, at p. 1472.)

1. *Substantial evidence supports the finding that minor used a deadly weapon in the assault*

At oral argument, minor's counsel emphasized that the issue raised in this case is whether the simple act of poking a classmate with a knife in a playful manner is sufficiently likely to cause great bodily injury or death. At the outset, we remind minor that we are not obligated to accept his version of events when the record equally supports another. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1092 ["To be sure, defendant offered explanations for some of the[] circumstances[ surrounding the offense], but the [court] did not have to believe them".] Even if he only meant to tease the victim, minor gave contrary indications when he restrained the victim using her hood and poked her with a knife in a place she could neither see nor control. Moreover, the victim stated minor appeared "mad" and seemed to want to "bother" her. Immediately after the incident, the victim appeared "visibly upset" and repeatedly stated she thought minor might hurt her. Even at the adjudication hearing, where she testified she did not think minor was trying to

8

hurt her, the victim admitted being afraid that minor might have harmed her anyway, simply by having a sharp knife pressed to her back. If the victim's testimony several months after the incident is at all equivocal, this is better explained by her admitted aversion to getting minor in trouble than by any deduction that she was not actually in danger because minor was only joking.

Even if the record does compel a conclusion that minor was only playing when he poked the victim with the knife, the undisputed facts of this case still support a finding that the knife was used as a deadly weapon. The knife had a sharp blade that was more than two and one-half inches long, and a police officer with over eight years' experience testified that she had seen knives of the same shape and sharpness cause severe and even fatal wounds. While minor may not have pushed the knife into the victim with enough force to break the skin, he still poked it against her back, which is an area of her body she could not even see, let alone control. Moreover, minor thwarted the victim's attempts to escape by holding onto her hood. Had someone bumped into or startled minor, or had he simply lost his balance, the sharp, "pointy" knife could have caused serious injury to the helpless victim. Substantial evidence therefore supports the trial court's finding that the knife qualified as a deadly weapon.

On appeal, minor places great weight on the trial court's statement that the knife "*could have* resulted in great bodily injury *if* more force were to be applied." (Italics added.) In his briefs and at oral argument, he contends the trial court erroneously looked

9

at the *possibility* that death or great bodily injury could have occurred instead of considering the *likelihood* that such harms would occur. We note, however, that minor proposes no articulable standard differentiating "likelihood" from "possibility." We are hard-pressed to see why common sense could not properly lead a finder of fact to conclude that pressing a sharp knife against a victim's back was likely to cause a serious bodily injury. We need not decide this issue in a vacuum, though, because cases considering whether an instrument qualifies as a deadly weapon have not been as parsimonious as minor urges us to be.

For example, in *Page* this court found a pencil, which is less sharp and less likely to cause serious harm than a knife, to be a deadly weapon when it was held against a victim's throat without any slicing or stabbing motions. (*Page*, *supra*, 123 Cal.App.4th at p. 1472.) Even more supportive of our point is *People v. Simons* (1996) 42 Cal.App.4th 1100, 1106-1107, in which the court held that a screwdriver was a deadly weapon even though the defendant had only brandished it at police officers without actually touching anyone. If a pencil held to a victim's neck, and a screwdriver that is only used to threaten from a distance, are both likely to cause death or serious bodily injury, then so is a sharp knife held to the back of a victim. As we have explained, the test is whether the knife was "used in such a manner as to be *capable of producing* and *likely to produce*, death or great bodily injury.' [Citation.]" (*Aguilar*, *supra*, 16 Cal.4th at pp. 1028-1029, italics added.) Because the knife was sharp, and because minor held it against the victim in

10

such a way that a sudden distraction or misstep could have resulted in a serious puncture wound, the knife had the capacity to cause serious bodily injury or death. It therefore meets the *Aguilar* standard for likelihood.

In arguing to the contrary, minor analogizes this case to *In re Brandon T.* (2011) 191 Cal.App.4th 1491 and *People v. Beasley* (2003) 105 Cal.App.4th 1078. In the former, the court found that insufficient evidence supported a finding that a minor had used a deadly weapon when he tried to cut a classmate's face with a butter knife. (191 Cal.App.4th at pp. 1494-1498.) *In re Brandon T.* is inapposite,[3] because there, "despite [the minor's] efforts, the knife would not cut." (*Id.* at p. 1497.) In addition, the knife could not have produced a stabbing injury because it broke when the minor pressed it against the victim. (*Id.* at pp. 1497-1498.) In other words, "the knife failed and was not capable of use as obviously intended." (*Id.* at p. 1498.) Here, in contrast, the knife was sharp and, according to the police officer's testimony, had the potential to cause serious injury.

*Beasley* is of no more assistance to minor. There, the court modified convictions for assault with a deadly weapon to reflect convictions for simple assault. (*People v. Beasley*, *supra*, 105 Cal.App.4th at pp. 1086, 1088.) This was because the record

---

[3] Oral argument included a suggestion that *Brandon T.* may have been wrongly decided. We do not and need not decide that issue because, as we have explained, the case is so factually inapposite as to have little to no application here.

11

contained insufficient evidence regarding the size, shape, weight, rigidity or composition of the items the defendant used to strike his victim, which were a broomstick and a plastic vacuum cleaner "extension." (*Id.* at pp. 1087-1088.) In this case, the victim described the knife as "sharp" and "pointy," and the police officer testified that she had seen similar knives cause profusely bleeding wounds and even fatalities. The trial court therefore had ample evidence from which to draw conclusions about the dangerousness of the knife.

2. *Minor need not have intended to use the knife as a deadly weapon*

In *People v. Page*, *supra*, 123 Cal.App.4th 1466, 1471, we wrote: " ' "When it appears, however, that an instrumentality . . . is capable of being used in a 'dangerous or deadly' manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, . . . its character as a 'dangerous or deadly weapon' may be thus established, at least for the purposes of that occasion." ' " Minor construes this to mean that, "In order to establish a violation of Penal Code section 245, subdivision (a)(1), the prosecution must prove that a possessor *intended* to use a knife as a deadly weapon."

Minor has misstated the People's burden. First, the passage quoted above does no more than establish that intent to use an item as a weapon can be sufficient, in some circumstances, to qualify the item as a deadly weapon. It in no way states that proof of such intent is necessary to this inquiry. Second, California Supreme Court jurisprudence

12

affirmatively disproves that an intent to use the knife as a deadly weapon is an essential element of the allegation under Penal Code section 245, subdivision (a)(1). In *People v. Colantuono* (1994) 7 Cal.4th 206, the court held that " 'the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being "any willful and unlawful use of force or violence upon the person of another." ' " (*Id.* at p. 214, quoting *People v. Rocha* (1971) 3 Cal.3d 893, 899.) Consequently, the People did not need to prove minor intended to use the knife as a deadly weapon.

Minor does not deny that he had the intent to commit a battery; in fact, he asks us to reduce the allegation to simple assault, which still requires an intent to commit a battery, instead of assault with a deadly weapon. We therefore need not inquire into the sufficiency of the evidence of minor's intent.

3. *That the victim's injuries were minor is relevant but not dispositive*

Finally, minor suggests the limited nature of the victim's injuries "shows that [he] did not intend to cause death or serious injury." We repeat that minor need not have intended to cause great bodily injury, as long as he intended to commit a battery and carried out this intention using an item that qualifies as a deadly weapon.

If what minor means is that the lack of serious injury supports his theory that he was only "playing" with the victim, we reject the notion that the absence of a serious injury to the victim affects the validity of the trial court's adjudication order. As minor concedes, "a defendant need not actually injure a victim to commit an assault." While

13

the extent of a victim's injuries may assist the trier of fact in deciding whether an item is likely to cause death or serious bodily injury (i.e. whether it qualifies as a deadly weapon), nothing in the authorities minor cites supports the view that the extent of injuries is dispositive.  For the reasons we have already stated, substantial evidence supports the finding that minor used a deadly weapon when he pressed a sharp knife into the victim's back.  That the victim was fortunate enough not to suffer a more serious injury does not weaken the force of this conclusion.

## DISPOSITION

The trial court's adjudication order is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

McKINSTER

J.

14