Filed 3/18/21  P. v. Arciniega CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ARCINIEGA,<br><br>    Defendant and Appellant. | 2d Crim. No. B304545<br>(Super. Ct. No. BA473088)<br>(Los Angeles County) |

Miguel Arciniega appeals a judgment following conviction of felony assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)[1]

This appeal concerns an assault with a deadly weapon that Arciniega, a county jail inmate, committed against a shirtless inmate who walked by Arciniega's cell on the way to the shower. The victim refused medical treatment and no photographs were taken of his injury, described as a two-inch laceration near his

---

[1] All statutory references are to the Penal Code unless stated otherwise.

left shoulder. Jail officials did not search for a weapon; the nature of the victim's injury suggested the weapon that Arciniega used was a razor. Arciniega appeals and challenges the assault with a deadly weapon instruction (CALCRIM No. 875) and the sufficiency of evidence to support his conviction. We reject these contentions and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Arciniega and George Perez, Jr. (Perez) were confined in Los Angeles County Jail on August 29, 2018. In the late afternoon, Los Angeles Deputy Sheriff Nicolas Serrato escorted Perez to the shower located at the end of the hallway. Perez wore only underwear and his hands were handcuffed behind his back.

As they walked by Arciniega's cell, Arciniega stuck his hands through the cell bars as if to offer Perez a handshake. Arciniega asked Perez to approach him. Perez turned his back toward Arciniega and attempted to shake hands with him from behind his back. Serrato testified that it was common for inmates to shake hands and that Arciniega and Perez had no prior conflicts while housed there.

Arciniega then "jab[bed]" his fist through the cell bars toward Perez, who "jolted back" toward the wall. Serrato and Perez continued to the shower. There, Perez looked at his shoulder which had a straight line two-inch laceration. Serrato offered Perez a towel and a roll of toilet paper to stop the bleeding. Perez accepted them, but rejected any medical assistance, declined to allow Serrato to take photographs of the cut, and refused to speak about the incident with an investigator. Perez commented that "nothing happened." The bleeding ceased in about 30 minutes. Serrato notified the jail nurse of Perez's injury.

Serrato testified that Perez's injury was consistent with an injury caused by a sharp weapon. He stated that inmates are provided razor blades when they shower and that they have no access to other objects that could cause a laceration.

The jury convicted Arciniega of assault with a deadly weapon. (§ 245, subd. (a)(1).) In a separate proceeding, the trial court found that Arciniega suffered a prior serious felony strike conviction. (§§ 667, subd. (d), 1170.12, subd. (b).) The court sentenced Arciniega to a three-year midterm after striking the strike conviction in the interest of justice. The court imposed a $400 restitution fine, a $400 parole revocation restitution fine (suspended), a $30 court security assessment, and a $40 criminal conviction assessment. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1); Gov. Code, § 70373, subd. (a).) It also awarded Arciniega 833 days of presentence custody credit.

Arciniega appeals and contends that 1) the trial court erred by instructing that the weapon used here could qualify as an inherently dangerous weapon (CALCRIM No. 875), and 2) insufficient evidence supports his conviction. (*In re B.M.* (2018) 6 Cal.5th 528, 539 [butter knife not capable of producing or likely to produce great bodily injury or death]; *People v. Henderson* (1999) 76 Cal.App.4th 453, 467-468 [razor blade not inherently deadly weapon as a matter of law].) Arciniega asserts that his conviction violates federal and state constitutional principles of due process of law.

*DISCUSSION*

*I.*

Arciniega argues that the trial court prejudicially erred by instructing that under the circumstances here, a deadly weapon includes a weapon that is inherently deadly, e.g., a razor.

3

(CALCRIM No. 875; *People v. Aledamat* (2019) 8 Cal.5th 1, 3-4 (*Aledamat*) [error to allow jury to consider box cutter as inherently deadly weapon but harmless beyond a reasonable doubt].)  The Attorney General concedes that a razor is not an inherently dangerous weapon, but asserts the error in not modifying CALCRIM No. 875 to exclude the phrase "inherently deadly" weapon is harmless beyond a reasonable doubt. (*Aledamat*, at pp. 13-15.)

Similar in part to the analysis described in *Aledamat*, the error here did not contribute to the verdict and is harmless beyond a reasonable doubt.  Considered as a whole and not on an isolated remark, the prosecutor focused the jury's attention on whether Arciniega used the weapon in a manner likely to produce great bodily injury.  The prosecutor referred to Arciniega's punching motion that caused Perez to jolt back in fear of further injury.  The prosecutor also stated that Arciniega removed the razor blade from a razor to use the blade in a manner that it is not designed to be used.  In addition, the prosecutor referred the jury to a jail video that captured part of the incident.

The trial court also instructed with other portions of CALCRIM No. 875 that *Aledamat* found important in precluding prejudicial error.  (*Aledamat*, *supra*, 8 Cal.5th 1, 15.)  In convicting Arciniega, the jury necessarily found that he did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and he had the present ability to apply force with a deadly weapon to a person.  The jury's finding concerning these elements necessarily considers how Arciniega

4

used the weapon.  Any error is harmless beyond a reasonable doubt.

*II.*

Arciniega contends that insufficient evidence supports his conviction because the weapon used did not qualify as a deadly weapon because the manner in which he used it was not likely to cause death or great bodily injury.  (*In re B.M.*, *supra*, 6 Cal.5th 528, 533 [object alleged to be a deadly weapon must be used in a manner that is not only capable of producing but also likely to produce death or great bodily injury]; *People v. Stutelberg* (2018) 29 Cal.App.5th 314, 322 ["flicking" a box cutter at victim's face not an act likely to cause death or great bodily injury].)  He adds that the trial court acknowledged that the evidence was "slim" but sufficient.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*In re B.M.*, *supra*, 6 Cal.5th 528, 549-550; *People v. Brooks* (2017) 3 Cal.5th 1, 57.)  Our review is the same in a prosecution primarily resting upon circumstantial evidence.  (*People v. Rivera* (2019) 7 Cal.5th 306, 331.)  We do not redetermine the weight of the evidence or the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)  We must accept logical inferences that the jury might have drawn from the evidence although we may have concluded otherwise.  (*Rivera*, at p. 331.)  "If the circumstances

5

reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)  In our review, we focus upon the evidence that was presented, rather than evidence that might have been but was not presented.  (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

A deadly weapon within the meaning of section 245, subdivision (a)(1) is " ' "any object, instrument or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' "  (*In re B.M.*, *supra*, 6 Cal.5th 528, 532-533.)  For an object to qualify as a deadly weapon based upon use, "the defendant must have used the object in a manner not only capable of producing but also *likely to produce* death or great bodily injury. . . .  [T]he extent of any bodily injuries caused by the object [is an] appropriate consideration[] in the fact-specific inquiry required by section 245(a)(1)."  (*Id.* at p. 530; *id.* at p. 535 [limited injury may suggest that nature of the object used or the way it was used was not capable of producing or likely to produce death or serious harm].)  In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other relevant facts.  (*Id.* at p. 533.)  The use of an object in a manner likely to produce death or great bodily injury requires more than a mere possibility that serious injury could have resulted from the way the object was used.  (*Id.* at p. 534.)  "But the evidence may show that serious injury was likely, even if it did not come to pass."  (*Id.* at p. 535.)

6

Here sufficient evidence and reasonable inferences therefrom established that Arciniega used a razor or other jail-made weapon in a manner likely to produce great bodily injury. Although no weapon was recovered, Serrato testified that the inmates were provided razors during their showers and that Perez's laceration appeared to be caused by a razor. Arciniega called Perez to his cell and as Perez's back was turned, Arciniega jabbed his hand toward Perez's bare upper body. Perez jolted back and avoided any additional jabs or injuries. He was also handcuffed and without means to protect himself. Within seconds, Serrato noticed a bleeding two-inch laceration on Perez's shoulder. Serrato gave Perez a roll of toilet paper and a clean towel to stop the bleeding. Although Perez refused treatment and refused to file a complaint, Serrato thought the injury was sufficiently significant to warrant further investigation. (*In re D.T.* (2015) 237 Cal.App.4th 693, 700 [knife pressed against victim's back used as deadly weapon although victim's skin not broken].) Serrato informed the jail nurse that Perez had been injured. This evidence and reasonable inferences therefrom establish that the razor was capable of causing great bodily injury and was likely to do so pursuant to the holding in *In re B.M.*, *supra*, 6 Cal.5th 528, 532-533.

*DISPOSITION*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        GILBERT, P. J.

We concur:


     YEGAN, J.               PERREN, J.

Michael Garcia, Judge

Superior Court County of Los Angeles

_____

Katja Grosch, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.