Filed 12/29/25  P. v. Hietala CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN HIETALA,<br><br>        Defendant and Appellant. | A171942<br><br>(Mendocino County<br> Super. Ct. No. 24CR04712) |

Defendant Justin Hietala appeals a final judgment following his convictions for two counts of attempted carjacking and one count of carjacking.  The jury found true that he personally used a deadly or dangerous weapon with respect to each count.  Hietala contends that these enhancements should be reversed as to counts two (attempted carjacking) and three (carjacking) due to prejudicial instructional error.  He further contends that the enhancement should be stricken as to count two because it was not pled in the information.  We agree that the deadly weapon enhancement attached to the attempted carjacking in count two must be reversed due to instructional error but otherwise affirm.

1

# I. BACKGROUND

## A. Procedural History

An information charged Hietala with attempted carjacking (Pen. Code,[1] §§ 664, 215, subd. (a); counts one and two) and carjacking (*id.*, § 215, subd. (a); count three). As to counts one and three, but not count two, the information alleged that Hietala personally used a deadly or dangerous weapon—a knife (deadly weapon enhancement). (§ 12022, subd. (b)(1).)

The case proceeded to a jury trial. The day before he rested, the prosecutor stated in open court that he would be moving to amend the information to add a deadly weapon enhancement (§ 12022, subd. (b)(1)) as to count two. The next day, the trial court found that the enhancement was supported by the evidence and granted the motion over Hietala's objection. The jury found Hietala guilty of all counts and found true the deadly weapon enhancements with respect to all counts.

The trial court sentenced Hietala to an aggregate term of 12 years and 4 months in prison. It imposed an aggravated term of nine years on count three and consecutive 10-month terms on counts one and two. With respect to the deadly weapon enhancements, the court imposed a consecutive one-year term as to count three, and consecutive four-month terms as to counts one and two. Hietala timely appealed.

## B. Facts

On the morning of June 24, 2024, N.R. was sitting in her car at a McDonald's parking lot with her 12-year old daughter and five-year old son. Her driver's side window was halfway down. As N.R. was about to get out of the car, she noticed a man approaching through her rearview mirror. The

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

man, later identified as Hietala, came up to N.R.'s car and began yelling and cursing at her. He pulled out a 12-inch serrated knife and stuck it through the window towards N.R.'s face. N.R. grabbed the knife and struggled with Hietala, resulting in several lacerations to her hand. Hietala tried to reach inside the car with his other hand to grab the keys from the ignition. N.R. eventually pushed Hietala's arms out of the car and rolled up her window. She then drove across the street to another parking lot to calm herself and her daughter down. A few minutes later, Hietala approached again, yelling and hitting the passenger's side of N.R.'s car. He tried to open the door and hit the passenger side window with his knife. N.R. reversed the car and drove away.

Roughly an hour later, M.F. was sitting in his car in a parking lot about a quarter mile away from where Hietala had attacked N.R. His driver's side window was down. Hietala approached M.F., told him he had an emergency, and offered M.F. money for a ride across town. M.F. declined. A few minutes later, Hietala returned, grabbed M.F. by the throat, pressed a knife to his neck, and demanded that he hand over the car keys. M.F. pleaded for Hietala to give him a few minutes to get the keys from his pocket. Hietala repeated his demand, told M.F. to get out of the car, and "said he was going to cut [M.F.'s] throat and kill [him]." M.F., in fear for his life, stepped out of the car and gave Hietala the keys. Hietala got in the car and drove off.

## II. **DISCUSSION**

### A. Instructional Error

Hietala contends that the trial court erred by instructing the jury that it could find the deadly weapon enhancements to be true if the knife was *either* "inherently deadly or dangerous *or* . . . used in such a way that [was] capable of causing and likely to cause death or great bodily injury." (Italics

added.)  He further contends that the error was prejudicial as to the enhancements on counts two and three because the jury may have improperly concluded that the knife was inherently deadly or dangerous.[2] The People concede that the court erred but argue that it was harmless beyond a reasonable doubt.  We find that the error was prejudicial with respect to the enhancement attached to the second attempted carjacking of N.R. (count two) but not with respect to the enhancement attached to the carjacking of M.F. (count three).

 1. *Relevant Background*

After the close of evidence, the trial court instructed the jury, pursuant to CALCRIM No. 3145, that if it found Hietala guilty of any of the charged crimes, it "must then decide whether, for each crime, the People have proved the additional allegation that [Hietala] personally used a deadly or dangerous weapon."  The court defined a deadly or dangerous weapon as "any object, instrument, or weapon that is inherently deadly or dangerous *or* one that is used in such a way that it is capable of causing and *likely* to cause death or great bodily injury."  (Italics added.)  It went onto explain that in deciding whether an object is a deadly weapon, the jury should "consider all the surrounding circumstances, including when and where the object was possessed, whether the object was changed from its standard form and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose."

With respect to the deadly weapon enhancements, the prosecutor argued during closing that "the evidence shows beyond all doubt" that

---

[2] "Because a knife can be, and usually is, used for innocent purpose, it is not among the few objects that are inherently deadly weapons."  (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 (*Aledamat*).)

4

Hietala used a "knife" "in all three transactions." Defense counsel made no arguments as to whether the knife constituted a deadly weapon. The prosecutor reiterated during rebuttal that "the evidence shows one thing across the board, a weapon was used" and, with respect to count three, that the force or fear element of carjacking was met when Hietala "had a knife to [M.F.'s] neck."

The jury returned its initial verdict forms, which found Hietala guilty on all counts and found true that he "was armed with a knife." The prosecutor asked to approach the bench, and a discussion was held off the record. The trial court then informed the jury that the verdict forms contained an error and did not match the language in the jury instructions with respect to the deadly weapon enhancements. The forms were corrected and the court instructed the jury to deliberate again. The jury quickly returned updated verdict forms and found the deadly weapon enhancements to be true.

### 2. *Law and Standard of Review*

As the People concede, the trial court committed error (known as alternative theory error) by "presenting the jury with two theories by which it could find [a knife] a deadly weapon: (1) inherently or (2) as used. The first theory (inherently) is incorrect, but the second theory (as used) is correct." (*Aledamat*, *supra*, 8 Cal.5th at p. 7.) When alternative theory error occurs, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Id.* at p. 13 [applying *Chapman v. Cal.* (1967) 386 U.S. 18].)

In *Aledamat*, the trial court committed alternative-theory error when it instructed the jury that a box cutter was a deadly weapon if it was *either*

inherently deadly *or* used in a deadly way.[3] (*Aledamat*, *supra*, 8 Cal.5th at p. 3.)  To determine whether that error was harmless beyond a reasonable doubt, the California Supreme Court applied a test articulated by Justice Scalia in his concurring opinion in *California v. Roy* (1996) 519 U.S. 2. (*Aledamat*, *supra*, 8 Cal.5th at pp. 14–15.)  Under this "nonexclusive" test, "[t]he reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." (*Ibid.*)

Applying Justice Scalia's test in *Aledamat*, our high court found the error harmless beyond a reasonable doubt.  Based on the jury instructions—which required the jury "to consider all of the circumstances in deciding whether the object was a deadly weapon, *either* inherently *or* as used"—the court concluded that "it seems unlikely the jury would simply view the box cutter as inherently deadly without considering the circumstances, including how [the] defendant used it." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.) According to the court, "[t]he arguments of counsel support[ed] this conclusion." (*Ibid.*)  For example, "no one ever suggested to the jury that there were two separate ways it could decide whether the box cutter was a deadly weapon." (*Ibid.*)  And defense counsel never argued that "the box cutter was not a deadly weapon." (*Ibid.*)

Indeed, the high court concluded that it would have been "futile" for defense counsel to do so because the defendant threatened to " 'kill' " the victim and because "the jury found [the] defendant assaulted the victim with the box cutter." (*Aledamat, supra*, 8 Cal.5th at p. 14.)  Specifically, the jury found that: "(1) [the] defendant did an act with a deadly weapon (either

---

[3] Like a knife, a "box cutter is not inherently deadly because it is not *designed* for that purpose." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.)

inherently or as used) that by its nature would directly and probably result in the application of force; (2) [the] defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) [the] defendant had the present ability to apply force with a deadly weapon to a person." (*Id.* at p. 15.) Thus, even if the jury "applied its common understanding to find the box cutter deadly because it is sharp and used or cutting," " '[n]o reasonable jury that made all of these findings could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid.*)

> 3. *Count Two*

Like the jury in *Aledamat*, the jury in this case likely considered "the circumstances, including how" Hietala used the knife, in determining whether the knife "was a deadly weapon, *either* inherently *or* as used." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.) But unlike the jury in *Aledamat*, the jury in this case did not find that Hietala assaulted N.R. with the knife. Instead, the jury only found that Hietala: (1) "personally used" a knife while attempting to commit a carjacking; and (2) "took a direct but ineffective step toward committing [c]arjacking" using "force *or* fear to take the vehicle or to prevent [N.R.] from resisting." (Italics added.) Thus, the question before us is "whether it would be impossible, on the evidence," for the jury to make *those* findings "without *also* finding" that Hietala used the knife "in such a way that it is capable of causing and likely to cause death or great bodily injury." (*Id.* at p. 15.) As for the second attempted carjacking of N.R., we conclude that it was not.

"The use of an object in a manner 'likely to produce' death or great bodily injury [citation] requires more than a mere possibility that serious

7

injury could have resulted from the way the object was used." (*In re B.M.* (2018) 6 Cal.5th 528, 534.) The term "likely," as used in this context, "refers to situations in which ' " 'the probability of serious injury is great.' " ' " (*Id.* at p. 533.)

Here, the second attempted carjacking of N.R. occurred a few minutes after Hietala's first attempt. During the first attempt, Hietala stuck the knife into N.R.'s car and cut her hand. But during the second attempt, Hietala only used the knife to hit the passenger side window of N.R's car. There is no evidence that the knife could have contacted N.R. Indeed, the car windows were closed, the car doors were locked, and N.R. quickly drove off without a struggle. Based on this evidence, the jury could have found that Hietala used the knife in an attempt to take N.R.'s car without finding that his use of the knife was likely to cause any bodily injury.

This conclusion is bolstered by the closing arguments. In closing, the prosecutor only asserted that a knife was used "in all three transactions" and did not suggest that the knife was used in a deadly or dangerous way during the second attempted carjacking. (*In re Martinez* (2017) 3 Cal.5th 1216, 1226–1227 [prejudice found where the prosecutor argues legally invalid theory during closing arguments].)

It is also bolstered by the error in the initial verdict forms. Those forms allowed the jury to find the enhancements to be true solely because Hietala was "armed with a knife." Although the jury ultimately used corrected forms, which did require a finding that Hietala "personally used a deadly or dangerous weapon," the use of the erroneous forms, coupled with the erroneous instruction, the prosecutor's arguments, and the manner in which Hietala used the knife during the second attempted carjacking of N.R., could have led the jury to conclude that the knife qualified as a deadly weapon

during that attempted carjacking regardless of whether Hietala used it in a deadly or dangerous manner. Thus, as to the deadly weapon enhancement attached to count two, we cannot conclude that the error was harmless beyond a reasonable doubt.

### 4. *Count Three*

We reach the opposite conclusion as to the deadly weapon enhancement attached to the carjacking of M.F. (count three), which Hietala concedes "is a closer call." The uncontroverted evidence at trial established that Hietala pressed a knife firmly against M.F.'s neck while threatening to "cut [his] throat and kill [him]." The prosecutor, in turn, emphasized during closing arguments that "putting a knife to someone's throat and threatening to harm them is both force and fear." Hietala's counsel, who only questioned the accuracy of M.F.'s testimony due to stress, did not dispute this. Necessarily believing M.F.'s testimony, the jury found that Hietala: (1) "used force or fear to take [M.F.'s] vehicle or to prevent [M.F.] from resisting;" and (2) "personally used" a knife during the carjacking. As in *Aledamat*, " '[n]o reasonable jury that made . . . these findings could have failed to find,' " based on the evidence, that Hietala used the knife "in a way that is capable of causing [and] likely to cause death or great bodily injury." (*Aledamat, supra,* 8 Cal.5th at p. 15.)

Hietala nonetheless contends that there was prejudice because "[a] rational jury could have concluded that while [his] use of the knife was dangerous, M.F.'s response made it unlikely that he would suffer great bodily injury or death." In other words, Hietala contends that it was possible for the jury to find that his use of the knife was not likely to cause injury or death because M.F. complied with Hietala's demands. But a weapon is "deadly or dangerous" based solely on the "way" that the weapon is "used" by a

9

defendant—and not based on the actions of the victim. (CALCRIM No. 3415; see *Aledamat*, *supra*, 8 Cal.5th at p. 6 [a weapon may be "deadly *in the way defendant used it*," italics added].)

Indeed, whether a weapon is deadly as used "focuses on potentiality" and not on "an actual injury to [the] victim, or even physical contact." (*In re D.T.* (2015) 237 Cal.App.4th 693, 698.) Thus, a knife pressed against a victim's back is likely to cause serious bodily injury even if the defendant only intended to "poke the victim in the back." (*Ibid.*) This is because "a sudden distraction or misstep could have resulted in a serious puncture wound." (*Id.* at p. 701.) For this same reason, a pencil, when held against a victim's neck, is a deadly weapon even if it "was used only to threaten, and not actually used to stab." (*People v. Page* (2004) 123 Cal.App.4th 1466, 1472.) Thus, it strains credulity to imagine that a jury would find that pressing a knife against a victim's neck while threatening to kill him was unlikely to cause death or great bodily injury. (See *People v. Thomas* (2011) 51 Cal.4th 449, 484 [in determining whether an error is harmless beyond a reasonable doubt, an appellate court need not consider a scenario, "while not impossible, was highly improbable and supported by only flimsy evidence"].) Accordingly, we find the instructional error harmless beyond a reasonable doubt as to the deadly weapon enhancement attached to count three.

B. <u>Sufficient Notice</u>

Hietala next argues that the deadly weapon enhancement attached to count two should be stricken because it was not pled in the information. Although the information was orally amended at trial to add this enhancement after the prosecution rested, Hietala contends that he did not receive adequate notice. As a threshold matter, we exercise our discretion to address Hietala's claim even though he arguably did not object to the

amendment based on lack of adequate notice. (*People v. Anderson* (2020) 9 Cal.5th 946, 962–963 (*Anderson*).) We, however, reject it.

Section 1170.1, subdivision (e), provides that "[a]ll enhancements shall be alleged in the accusatory pleading." Indeed, "a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.) Nevertheless, an accusatory pleading may be amended for "any defect or insufficiency, at any stage of the proceedings." (§ 1009.) And "not every amendment to a pleading—even one that increases the defendant's potential criminal liability—need be made in writing." (*Anderson, supra,* 9 Cal.5th at p. 960.) But regardless of whether the amendment is written or oral, "the touchstone of determining the adequacy of an accusatory pleading is whether the defendant had adequate notice of the charges against him." (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 134 (*Sandoval*).)

In *Sandoval*, the prosecution "orally amended the information to allege the strike prior in open court, in the presence of [the defendant] and his attorney." (*Sandoval, supra,* 140 Cal.App.4th at p. 134.) At that time, defense counsel "stated that she had no objection to the amendment." (*Ibid.*) The Court of Appeal concluded that the defendant "had reasonable notice of the prior strike allegation and that any defect in the form of the allegation did not prejudice [him]." (*Ibid.*) Hietala attempts to distinguish *Sandoval* on the grounds that the trial court in his case only granted the amendment after the prosecution had rested and over defense counsel's objection. But Hietala fails to explain how this deprived him of fair notice. He already knew about the deadly weapon enhancements attached to the other two counts and still had an opportunity to present evidence (including recalling N.R.) relating to

11

the new enhancement.  Rather than do so, he "rest[ed] based on the state of the evidence."  Given this, we find that Hietala received adequate notice of the amendment and was not prejudiced.[4]

### III.  <u>DISPOSITION</u>

The judgment is reversed and remanded with respect to the deadly weapon enhancement attached to count 2 (attempted carjacking).  In all other respects the judgment is affirmed.


CHOU, J.

We concur.

JACKSON, P. J.
BURNS, J.




A171942/ *P. v. Hietala*

---

[4] Hietala's reliance on *People v. Arias* (2010) 182 Cal.App.4th 1009, is misplaced.  There, the prosecution *never* moved to amend the information to add the enhancement.  (*Id.* at pp. 1020–1021.)